**Gustave B. GARFIELD, Plaintiff,**

**v.**

**Edmund PALMIERI, Defendant.**

United States District Court
S. D. New York.
April 18, 1961.

The action at bar was commenced in the Supreme Court of the State of New York. It was removed to this court pursuant to 28 U.S.C. § 1442,[1] upon the ground that the acts of Judge Palmieri claimed to be defamatory were performed by him under color of his office as United States District Judge and in performance of the duties of that office.

■ A motion has now been made in this court, pursuant to Rule 12(b), F.R. Civ.P., 28 U.S.C., to dismiss the complaint for failure to state a claim on which relief can be granted. In support of that motion counsel for Judge Palmieri has submitted an affidavit which presents matters outside the complaint. Garfield, who appears pro se, has submitted an affidavit in opposition which also goes into matters outside the pleading at some length. Pursuant to Rule 12(b) (6), F.R.Civ.P., the motion will therefore be treated as one for summary judgment and disposed of as provided in Rule 56, as plaintiff requests.

The complaint alleges in substance that Garfield has been for many years a member in good standing of the bar of the State of New York, of this court and of other courts; that the matter alleged to be defamatory was published by the West Publishing Company in Volume 180 of the Federal Supplement which is widely circulated; that the alleged defamatory matter consisted of a statement by Judge Palmieri of "his belief that this plaintiff had been rebuked by the United States Court of Appeals for the Second Circuit in an opinion filed by it in the case of Fleischer v. Phillips, 264 F.2d 515, cert[iorari] den[ied] [Fleischer v. Benjamin] 359 U.S. 1002, [79 S.Ct. 1139, 3 L.Ed.2d 1030], for unworthy conduct as an attorney"; that such matter was false and published maliciously by Judge Pal-

Gustave B. Garfield, New York City, plaintiff, pro se.

S. Hazard Gillespie, Jr., U. S. Atty., for Southern Dist. of New York, New York City, for defendant, Stephen Kurzman, Asst. U. S. Atty., New York City, of counsel.

FREDERICK van PELT BRYAN, District Judge.

This is an action for libel brought by Gustave B. Garfield, an attorney at law, against Judge Edmund Palmieri, a United States District Judge for the Southern District of New York. The alleged defamatory matter is contained in an opinion rendered by Judge Palmieri in the case of Fleischer, etc. v. A. A. P., Inc. et al., in which Garfield appeared as attorney for the plaintiff. The opinion was published in D.C., 180 F.Supp. 717.

---

1. "§ 1442. Federal officers sued or prosecuted

"(a) A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and.

division embracing the place wherein it is pending:

\* \* \* \* \*

"(3) Any officer of the courts of the United States, for any Act under color of office or in the performance of his duties."

mieri with intent to degrade and injure Garfield in the practice of his profession and did so degrade and injure him; that Judge Palmieri caused such matter to be published while acting unofficially and privately in his individual capacity and when no matter was sub judice before him; and that as a result the false impression has been created in the profession that Garfield had been censured by the Court of Appeals when, in fact, he had not. Garfield seeks damages in the sum of $250,000.

The opinion which contained the allegedly defamatory matter was rendered by Judge Palmieri in an action for damages arising from an alleged conspiracy to violate the anti-trust laws and for other relief, which was then pending before him. Garfield was attorney for the plaintiff in that action. The defendants had moved before Judge Palmieri to dismiss the second and third claims stated in the amended complaint and to strike portions of it. In the course of the argument of that motion Garfield made an application to disqualify Judge Palmieri on the ground of "personal bias or prejudice * * * against him" under 28 U.S.C. § 144. This application was made as a result of an exchange between counsel during argument which required Judge Palmieri to refer to language of the Court of Appeals of the Second Circuit in dismissing a prior appeal in the same action (Fleischer v. Phillips, supra) which he stated was, in his view, a rebuke to Garfield.[2]

Thereafter Judge Palmieri rendered a written opinion in which he denied Garfield's application for disqualification and also disposed of the defendant's motion on the merits.

In denying the application to disqualify Judge Palmieri again stated his view that Garfield had been rebuked by the Court of Appeals.

The opinion was duly filed with the clerk of the court on July 15, 1959, and then became part of the official record in the Fleischer case.

On February 8, 1960 West Publishing Company wrote to Judge Palmieri concerning the opinion as follows:

"In a recent opinion by Justice Spector which we are preparing for publication there is reference to your unreported opinion in the above case.

"We shall therefore appreciate it if you will send us copy [sic] of your opinion, together with the names and addresses of the attorneys for the respective parties and the filing date with a view to publication in the Federal Supplement so that a definite volume and page reference may be given in Judge Spector's opinion."

Judge Palmieri sent the opinion to West in compliance with this request and shortly thereafter it appeared under the title of the case, Fleischer v. A.A.P., Inc., in 180 F.Supp. 717.

In July 1960 Garfield, appearing pro se, brought an action against Judge Palmieri in the United States District Court for the Eastern District of New York, 193 F.Supp. 582. He sought a judgment (a) declaring that portion of Judge Palmieri's opinion referring to the denial of Garfield's application to disqualify to be "oppressive, false, malicious and libelous", rendered without jurisdiction and in deprivation of Garfield's constitutional rights; (b) directing the clerk of the United States District Court for the Southern District of New York to expunge such matter from the record of the court; and (c) for such other order as would be suitable to vindicate his rights. Counsel for Judge Palmieri moved to dismiss the complaint in that action for failure to state a claim on which relief

2. The Court of Appeals said: "Even though the case thus cannot be accepted on the merits, we have necessarily had to explore them to reach our conclusion; and because conduct of members of the bar has been so severely questioned, we note our concurrence with the conclusions of the two district judges that respondents have done nothing improper. The strictures are unjustified and unworthy." 264 F.2d at pages 517–518.

could be granted. Judge Bartels of the Eastern District granted the motion. He held that Judge Palmieri had had jurisdiction over the subject matter on which his opinion was written and that he was entitled to full judicial immunity against civil suit which was a complete bar to the maintenance of the action. An appeal from the judgment of dismissal is presently sub judice in the Court of Appeals.

It may be noted that in his action in the Eastern District Garfield did not refer to the publication of the opinion in the Federal Supplement though that had occurred prior to the commencement of the action. Garfield states that he was not then aware that the opinion had appeared in the Federal Supplement but that when this came to his attention he commenced the present action in the New York Supreme Court.

While stoutly maintaining that nothing in the opinion is false or untrue or was written or published with any malice or intent to injure or degrade Garfield, Judge Palmieri takes the position on this motion that he is protected by an absolute privilege against civil liability for any statements in his opinion. He asserts that liability in this case is governed by federal law which gives immunity against civil suit to federal judges for all acts performed in the course of their duties and within the scope of their powers. See Bradley v. Fisher, 13 Wall. 335, 80 U.S. 335, 20 L.Ed. 646. He contends that the acts of which Garfield complains were performed in the course of his official duties as a United States District Judge and that therefore this action is barred even if the allegations as to falsity, malice or intent to injure and defame could be established.

Garfield, on the other hand, takes the position that New York and not federal law governs the privilege asserted and relies on Murray v. Brancato, 290 N.Y. 52, 48 N.E.2d 257, 146 A.L.R. 906, as expressing the New York view. He contends that under the Murray case, since Judge Palmieri sent the opinion to West Publishing Company some months after it had been filed, and at a time when the Fleischer case was no longer before him, he was not acting within the scope of his judicial duties or powers, and is not entitled to absolute immunity. Garfield asserts, therefore, that there are triable issues as to the truth or falsity of the alleged defamatory matter and whether or not it was published with malice and intent to injure and defame him, and that therefore the motion for summary judgment must be denied.

Thus, the first question presented is whether Judge Palmieri's claim of absolute privilege is governed by New York or federal law.

That question was conclusively answered by the Supreme Court in the recent case of Howard v. Lyons, 360 U.S. 593, 79 S.Ct. 1331, 3 L.Ed.2d 1454. There suit was brought in the Massachusetts District Court invoking diversity jurisdiction against a captain in the United States Navy, who was commander of the Boston Naval Shipyard. Plaintiffs, who were civilian employees of the Shipyard and an employees' representative group, alleged that he had circulated a defamatory statement concerning them. The statement purported to be an official memorandum to defendant's naval superiors which had been released by him to various newspapers and wire services and to the members of the Massachusetts Congressional Delegation. It was alleged that in circulating the statement defendant had acted maliciously, wickedly, recklessly and falsely and with intent to injure plaintiffs' reputations.

The Supreme Court held that the validity and extent of defendant's claim of absolute privilege as a federal officer in respect of civil liability for statements allegedly defamatory under state law was to be formulated by the federal courts, in the absence of legislative action by Congress, and was not governed by state law. The Court said:

"At the outset, we take note of a question which the Court of Appeals * * * did not find it necessary to resolve—whether the extent of the privilege in respect of civil lia-

bility for statements allegedly defamatory under state law which may be claimed by officers of the Federal Government, acting in the course of their duties, is a question as to which the federal courts are bound to follow state law. We think that the very statement of the question dictates a negative answer. The authority of a federal officer to act derives from federal sources, and the rule which recognizes a privilege under appropriate circumstances as to statements made in the course of duty is one designed to promote the effective functioning of the Federal Government. No subject could be one of more peculiarly federal concern, and it would deny the very considerations which give the rule of privilege its being to leave determination of its extent to the vagaries of the laws of the several States. Cf. Clearfield Trust Co. v. United States, 318 U.S. 363 [63 S.Ct. 573, 87 L.Ed. 838]." 360 U.S. at page 597, 79 S.Ct. at page 1333.

The only publication before the Supreme Court was the circulation of the report to the Massachusetts Congressional Delegation. It was held that this was done in the course of the discharge of defendant's official duties and in relation to matters committed to him for determination, and that therefore his plea of absolute privilege must be sustained.

■ Plainly, if federal law governs the scope and extent of a privilege asserted by other federal officers, it also governs the privilege asserted by a federal judge. Federal law, to be formulated by the federal courts in the absence of congressional action on the subject, and not state law, applies in the case at bar.

■ The absolute privilege afforded judges against civil liability for statements and acts performed in the course of their judicial duties, even if done maliciously or corruptly, is firmly rooted in the common law. See Odgers and Ritson, Odgers on Libel and Slander, pp. 191–196 (6 Ed.1929); Newell, Slander and Libel,

§§ 360 and 361 (4 Ed.1924); Harper and James, The Law of Torts, § 5.22 (1956) and cases cited in these texts. This privilege applies to judges of the federal courts. Bradley v. Fisher, supra; Meredith v. Van Oosterhout, 8 Cir., 286 F.2d 216; Martin v. Wyzanski, D.C.Mass., 191 F.Supp. 931; Garfield v. Palmieri, D.C. E.D.N.Y., supra. See, also, Randall v. Brigham, 7 Wall. 523, 74 U.S. 523, 19 L.Ed. 285.

■ There is no doubt that Judge Palmieri's opinion was written in the course of his judicial duties upon a matter over which he had jurisdiction and which was properly before him for adjudication. The portion of the opinion alleged to be defamatory dealt with a denial of an application under 28 U.S.C. § 144 to disqualify Judge Palmieri from sitting on motions to dismiss the complaint in Fleischer v. A. A. P., Inc., then pending before him. Judge Palmieri was in duty bound to pass upon the petition for disqualification and he made the judicial determination to deny it, as he had a right to do. There is no merit whatsoever to Garfield's claim that the Judge was not acting in the course of his judicial duties, or, as Garfield puts it, "was not sitting in the seat of judgment" when he rendered the opinion denying the application to disqualify.

Moreover, this question was disposed of by Judge Bartels in Garfield's suit in the Eastern District of New York and laid to rest between the parties by the dismissal of the complaint on the ground that Judge Palmieri was protected by an absolute privilege against civil liability for statements made in his opinion. The question is fully discussed in Judge Bartels' opinion and no further discussion is necessary here.

Garfield contends, however, that the case at bar raises an additional issue not present in the suit in the Eastern District. This issue is said to arise out of the act of Judge Palmieri in sending the opinion to West several months after it was rendered, at a time when Fleischer v. A. A. P., Inc. was no longer sub judice before him. Garfield urges that Judge

Palmieri in so doing acted outside the scope of his judicial powers and duties, is in no different position than a private citizen under like circumstances and therefore has no claim to absolute privilege.

█ Whatever may be thought of the decision of the New York Court of Appeals in Murray v. Brancato, supra, on which Garfield almost exclusively relies, there is no merit in his contention. Judge Palmieri was acting well within the scope of his powers, duties and authority as a Federal Judge when he sent his opinion to West Publishing Company in response to its request.

█ There are no official published reports of the opinions of the federal district courts. The Federal Supplement published by West, as part of its reporter system, furnishes the only comprehensive compilation of such opinions and is recognized as authoritative by the courts and the profession. In a system of law based on stare decisis it is not enough that opinions of the court be available only to litigants and their counsel. It is essential that such opinions be readily accessible to the legal profession generally and to the courts for purposes of research, citation and general information as to the state and development of the law, as well as to others who may wish to refer to them. The sound and efficient administration of federal justice requires that such publication in a reporter system of the nature of the Federal Supplement be unfettered. This is in the interest not only of litigants, the legal profession and the courts themselves, but of the public generally. Such unfettered publication is a matter of public policy and outweighs and overrides any injury to an individual which might result from the application of such a rule.

█ In the Southern District of New York it is the usual practice for district court judges to send filed opinions which they deem useful to the profession to West Publishing Company for publication in the Federal Supplement. It is also their usual practice to send to West, upon its request, opinions they have filed which have not been previously forwarded or published.[3] These have been the practices to my own knowledge since I have been on the federal bench and doubtless for many years before that. I take judicial notice of these practices.

█ Moreover, it may be noted that when Judge Palmieri filed his opinion in the office of the clerk of the district court on July 15, 1959 it became part of the official record of the Fleischer case and a public record. Thereafter the opinion was freely available to any member of the public who chose to copy it or to obtain a copy from the clerk upon payment of the requisite fee. West could have obtained the opinion from the clerk's office at any time had it chosen to do so.

In sending the opinion to West at its request, Judge Palmieri was, in any event, doing no more than the clerk of his court would have been required to do had West made the request to him.

█ The official functions, powers and duties of a Federal District Judge are not confined to those which he exercises when actually sitting in the seat of judgment. There are numerous functions of an administrative or quasi judicial nature which are indispensable to the proper administration of justice in his court. See Martin v. Wyzanski, supra. Indeed, a substantial, some say too substantial, part of the district judge's time must be devoted to such functions. Such functions are just as much a part of a judge's official duties as the hearing of testimony and argument, the charging of a jury, the rendition of judgment, the rendering of judicial decisions and opinions, and other acts which might be considered to be of a purely judicial nature.

█ As was recently said in Martin v. Wyzanski, supra:

"It is a matter of common knowledge that the vast growth in the vol-

3. Cf. Barr v. Matteo, 360 U.S. 564, 574, 79 S.Ct. 1335, 3 L.Ed.2d 1434.

ume of Federal litigation over the years has carried with it the absolute necessity that federal judges perform and discharge certain administrative duties incident to the proper functioning of the courts over and above presiding at trials. Suffice it to say that the public interest in effective functioning of government and the efficient administration of justice would be as seriously prejudiced if judges were exposed to liability for administrative acts performed in the course of their official duties as it would be if judges were without immunity as regards the remainder of their judicial duties."

When a judge sends an opinion to the West Publishing Company for publication in the Federal Supplement he is performing one of the functions of his office as a federal judge which is well within the scope of his powers.

I hold that the act of Judge Palmieri in sending his opinion to West at its request is as absolutely privileged against civil liability as are the acts of rendering and filing the opinion. The absolute privilege applies even if it were possible for Garfield to establish his allegations of falsity, malice and intent to do him injury.

This conclusion is fully supported by recent federal cases.

For example, Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 1341, 3 L.Ed.2d 1434, involved a libel suit brought against Barr, the Acting Director of the Office of Rent Stabilization by former employees of that office. The alleged defamatory matter announced the suspension of the former employees and accused them of devising and carrying out a scheme to obtain terminal leave payments which amounted at least to overreaching. It was contained in a press release issued at Barr's direction. The Supreme Court noted that the issuance of such releases had become "standard agency practice". It held that since the issuance of the release was within "the outer perimeter" of Barr's line of duty, his claim of absolute privilege was a complete bar to the maintenance of the suit for libel despite the allegations of malice contained in the complaint. The privilege applied even though Barr was not required to make the release and it was made in the exercise of discretionary authority. The court said, 360 U.S. at page 575, 79 S.Ct. at page 1341:

"That petitioner was not *required* by law or by direction of his superiors to speak out cannot be controlling in the case of an official of policy-making rank, for the same considerations which underlie the recognition of the privilege as to acts done in connection with a mandatory duty apply with equal force to discretionary acts at those levels of government where the concept of duty encompasses the sound exercise of discretionary authority."

To the same effect is the companion case of Howard v. Lyons, supra. See, also, Sauber v. Gliedman, 7 Cir., 283 F.2d 941; Gregoire v. Biddle, 2 Cir., 177 F.2d 579, certiorari denied 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363.

The case of Murray v. Brancato, 290 N.Y. 52, 48 N.E.2d 257, 146 A.L.R. 906, on which plaintiff places his principal reliance, has no application here. The New York law which it lays down is quite different from the law formulated by the federal courts which governs this case.

Moreover, were it to be assumed that the federal law applicable to the case at bar were not yet settled so as to require me to formulate it here, I would not find Murray v. Brancato persuasive. The case is distinguishable on its facts from the case at bar. In New York the official reporter selects the opinions of the lower courts to be published in the reports made official by law. The opinion alleged to have been defamatory was sent by the defendant judge to an unofficial reporter, unsolicited and with the specific request that it be published, all allegedly with malice aforethought and with the actual intent to defame and injure the plaintiff. It was these facts, quite different from those presented here, upon which the

opinion of the majority relied in holding on a motion for judgment on the pleadings that the defense of absolute privilege was not a complete bar to the maintenance of the action.

■ The New York Court of Appeals was divided four to three. The question presented was so narrow that the majority felt itself precluded from considering New York constitutional and statutory provisions deriving from well-settled principles of the common law which might well have led to a different conclusion. Cf. Bradford v. Pette, 204 Misc. 308. Quite apart from this and from the factual distinctions I have mentioned, the majority of the court does not seem to me to have reached the correct result. As I see it, the dissenting opinion upholding the absolute privilege under the circumstances presented is the sounder view.

■ The immunity available to administrative and executive officers of the federal government is founded on the same rationale and is governed by the same consideration as the privilege available to federal judges. Barr v. Matteo, supra, 360 U.S. at pages 569–572, 79 S.Ct. at page 1338. Moreover, as was indicated there, " * * * the higher the post, the broader the range of responsibilities and duties, and the wider the scope of discretion * * *" the broader is the scope of the privilege. 360 U.S. at page 573, 79 S.Ct. at page 1340.

■ There is no need to dwell on the broad functions, powers and authority of the Federal District Judge, nor the absolute necessity in the public interest for preserving his independence so that he may exercise all of the powers, duties and authority of his office freely and fearlessly. In order to do so he must be shielded against the harassment and hazards of damage suits brought on account of action taken in the exercise of the responsibilities of his office. The immunity of federal judges from civil suit extends to the full range of their powers and responsibilities and is a complete bar to the present suit.

Garfield therefore cannot maintain this action and the motion for summary judgment in favor of the defendant is granted.

Judgment will be entered accordingly. It is so ordered.